IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN S. McCULLOUGH,                        )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )        No. 05 C 1185
                                           )
JO ANNE B. BARNHART, COMMISSIONER          )
OF SOCIAL SECURITY,                        )
                                           )
                    Defendant.             )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff John S. McCullough ("McCullough") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of the final agency decision of the Commissioner of Social

Security ("Commissioner") denying his application for disability insurance benefits ("DIB")

pursuant to the Social Security Act, 42 U.S.C. §§ 416(i), 423(d).  Before the Court are the

parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

For the following reasons, the Court grants Defendant's motion for summary judgment and

denies Plaintiff's motion for summary judgment.

## PROCEDURAL BACKGROUND

On January 15, 2003, McCullough filed an application for DIB alleging that he became

disabled due to liver disease, hepatitis, pancreatitis, anemia, jaundice, and knee arthritis on

January 15, 2002.  (R. 8-1, Certified Copy of Administrative Record, at 56-58, 73.)  The Agency

denied McCullough's initial DIB application and also his application for reconsideration.  (*Id*. at

30-31.)  Upon McCullough's timely request for an administrative hearing, McCullough, who

was represented by counsel, testified before the Administrative Law Judge ("ALJ") on April 1,

2004.  (*Id.* at 150-219.)  A vocational expert and medical expert also testified at the administrative hearing.  (*Id.*)  On July 26, 2004, the ALJ issued an unfavorable decision concluding that McCullough was not disabled within the meaning of the Social Security Act.  (*Id.* at 9-17.)  Thereafter, the Appeals Council denied McCullough's request for review.  (*Id.* at 4-6.)  As such, the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. § 404.981.

**FACTUAL BACKGROUND**

**I.      Claimant McCullough**

McCullough was born on June 2, 1970 and was thirty-three years old at the time of his administrative hearing.  (*Id.* at 141, 150.)  He completed high school and attended one year of college.  (*Id.* at 79, 158.)  In the past, McCullough worked as a warehouse clerk, a customer service representative, an assistant manager in a restaurant, an arbitration clerk, and a service clerk.  (*Id.* at 82, 87.)  In these positions, McCullough was not required to lift more than ten pounds.  (*Id.* at 83-88.)  From March 2003 until October 2003, McCullough worked as a part-time bagger and stocker at a Jewel Food Store, occasionally lifting five to ten pounds.  (*Id.* at 162-63.)  At the Jewel Food Store, McCullough's boss allowed him not to push carts like other employees because McCullough could not stand and walk like everyone else did.  (*Id.* at 164, 179.)  In December 2003, McCullough worked part-time as a driver's helper for United Parcel Service, which required him to lift and carry objects weighing up to seventy pounds.  (*Id.* at 160-61.)

At the administrative hearing, McCullough testified that he was disabled due to degenerative liver disease.  (*Id.* at 173.)  He further testified that he had been drinking beer and

vodka since he was fourteen or fifteen years old, but that he had not had any alcohol since December 2002. (*Id.* at 173-74.) He also testified that he had used street drugs, such as marijuana, heroin, and cocaine, from 1980 until 1996. (*Id.* at 175.) Moreover, he stated that he had pain in his knees and across his abdomen and that his knee pain made it difficult for him to get up and stand. (*Id.* at 176, 181.) McCullough also explained that he did not take pain medication because he could not afford it. (*Id.* at 177.)

## II. Medical Evidence in the Administrative Record

### A. Emergency Room Examination

In June 2002, McCullough sought medical treatment for abdominal pain and vomiting at the emergency room of Provena Mercy Center in Aurora, Illinois. (*Id.* at 106-117). The emergency room doctor diagnosed McCullough with gastritis, electrolyte imbalance, dehydration, and malnutrition. (*Id.*) An ultrasound of McCullough's liver revealed some abnormalities that could have been the result of fatty infiltration. (*Id.* at 111.) Dr. Plotke of Provena Mercy Hospital recommended a computed tomography (CT) study because he could not exclude other liver abnormalities. (*Id.*) At that time, McCullough's bilirubin levels were elevated to 3.1 mg/dL. (*Id.* at 113, 192.)

### B. Hospitalization

In late December 2002, McCullough was hospitalized at Provena Mercy Hospital. (*Id.* at 156, 173.) At that time, Dr. Plotke reviewed an ultrasound of McCullough's liver, which appeared enlarged. (*Id.* at 127.) The medical record also contains a note by Dr. Gowhar Khan of Provena Mercy Center indicating that McCullough had liver disease with hepatitis, pancreatitis, anemia, jaundice, and knee arthritis and that he needed disability benefits and medical insurance

"ASAP."  (*Id*. at 119, 121.)  At that time, McCullough's bilirubin levels were elevated and ranged from 3.4 to 11.2 mg/dL.  (*Id*. at 129.)

### C.    Follow-Up Examination

When McCullough visited Dr. Khan in January 2003, McCullough reported that he had been abusing alcohol until December 2002.  (*Id*. at 119.)  Dr. Khan performed a physical examination that revealed McCullough had an enlarged liver and some jaundice.  (*Id.* at 120.)  McCullough's musculoskeletal examination, however, was within normal limits.  (*Id.*)  Dr. Khan diagnosed alcoholic liver disease, jaundice, and alcoholic hepatitis.  (*Id.*)  He then prescribed Vicodin for McCullough's abdominal pain.  (*Id.*)  Three weeks later, McCullough reported to Dr. Khan that he felt better.  (*Id.*)  Dr. Khan also indicated that the jaundice had decreased.  (*Id*.)  At that time, McCullough's bilirubin levels were down to 1.2 mg/dL.  (*Id.* at 125.)  Dr. Khan also completed a report indicating that McCullough's ability to bend, stand, stoop, sit, turn, climb, pull, speak, travel, and perform fine manipulations was reduced by twenty to fifty percent of his capacity.  (*Id.* at 136.)  Dr. Khan further noted that McCullough would be placed on the liver transplant list at the University of Illinois at Chicago and that McCullough needed insurance and disability benefits "ASAP."  (*Id.*)

### D.    Illinois Bureau of Disability Determination Services Evaluations

In April 2003, the Illinois Bureau of Disability Determination Services ("DDS") requested that Dr. Roopa K. Karri examine McCullough.  (*Id.* at 137-40.)  McCullough told Dr. Karri that he had been an alcoholic for ten or fifteen years and had stopped abusing heroin when he was twenty-six years old.  (*Id.* at 137-38.)  Further, McCullough explained that he was taking Vicodin, but it did not help his abdominal pain.  (*Id.* at 138.)  He also stated that he had knee

pain when he walked. (*Id*.) McCullough also stated that he did not clean, shop, or cook. (*Id*.) The musculoskeletal examination revealed that McCullough had an unremarkable gait and that he did not use a device to walk. (*Id*. at 139.) In addition, McCullough's range of motion in his upper extremities, spine, hips, right knee, and ankles were normal, but the range of motion in his left knee was decreased. (*Id*.) McCullough's grip strength was decreased, and a left knee x-ray showed normal findings. (*Id*. at 139, 141.)

Also in April 2003, Dr. Bruce Donnelly, a physician with DDS, made a residual functioning capacity ("RFC") assessment concluding that McCullough was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently. (*Id*. at 142-49.) Dr. Donnelly further concluded that McCullough could stand/walk and sit about six hours in an eight-hour workday. (*Id*. at 143.) Further, Dr. Donnelly found that McCullough could occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel and crawl, and frequently balance, stoop, and crouch. (*Id*. at 144.) The RFC assessment also indicated that McCullough had no manipulative, visual, communicative, or environmental limitations. (*Id*. at 145-46.) In August 2003, Dr. Vidya Madala, another DDS physician, reviewed the medical evidence and concurred with Dr. Donnelly's RFC assessment. (*Id*. at 142.)

**III.     Medical Expert Testimony**

At the April 1, 2004 administrative hearing, Dr. Ashuk Jilhewar reviewed the medical evidence in the record and testified as a medical expert. (*Id*. at 186-209.)  Dr. Jilhewar first observed that the record contained no medical evidence prior to July 2, 2002, even though McCullough's reported onset date was January 15, 2002. (*Id*. at 187-88, 191.)  Further, Dr. Jilhewar testified that McCullough experienced significant drops in his bilirubin levels consistent

with his testimony that he stopped drinking alcohol in December 2002.  (*Id.* at 193-94, 197.)  Dr. Jilhewar opined that McCullough had met Listing 5.05C, chronic liver disease, during the period from July 2, 2002 through January 26, 2003, but his bilirubin levels improved 70 percent thereafter, and thus McCullough did not meet this listing after January 2003.  (*Id.* at 194-95, 214.)

Next, Dr. Jilhewar discussed Dr. Karri's consultative examination, noting that there was no finding of chronic liver disease or jaundice.  (*Id.* at 196.)  Dr. Jilhewar noted, however, that the limited range of motion in McCullough's left knee was inconsistent with the ability to walk with a normal gait and the normal x-ray findings.  (*Id.*)  Further, Dr. Jilhewar explained that due to the lack of information in the medical records, he did not know if McCullough had chronic pancreatitis.  (*Id.* at 200-02.)  Finally, Dr. Jilhewar testified that Dr. Donnelly's RFC assessment was appropriate based on Dr. Karri's consultative examination findings.  (*Id.* at 213.)

## IV.    Vocational Expert Testimony

Vocational expert, Cheryl Hosieth, also testified at the administrative hearing.  (*Id.* at 209.)  Specifically, she testified that the majority of McCullough's past jobs were light and unskilled.  (*Id.* at 210.)  McCullough's job at UPS, however, was medium and unskilled and his arbitration clerk job was light and skilled.  (*Id.*)  The ALJ asked the vocational expert to consider a hypothetical individual of McCullough's age, educational background, and work history, who had the limitations set forth in Dr. Donnelly's RFC assessment, and then determine the person's ability to meet substantial, gainful activity.  (*Id.* at 210-11.)  Based on this hypothetical, Hosieth testified that the individual could perform McCullough's past relevant work.  (*Id*. at 212.)

## V.     The ALJ's Rulings

The ALJ reviewed the entire record and conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520, as discussed in detail below.  (*Id*. at 12-13.)  As to the first step of the analysis, the ALJ made no finding concerning whether McCullough was employed in substantial gainful activity.  (*Id.* at 14, 17.)  Next, the ALJ concluded that McCullough's liver disease and history of alcohol abuse were "severe."  (*Id*.)  The ALJ then determined that McCullough met the requirements of Listing 5.05C, chronic liver disease, under 20 C.F.R., Part 404, Subpart P, Appendix 1, during the time period of July 2002 to January 2003.  (*Id*.)  The ALJ however, also concluded that McCullough did not meet Listing 5.05C or any medically equal impairment under the regulations during any other time period.  (*Id.* at 14-15.)  Accordingly, the ALJ found that McCullough was not disabled at step three because he did not meet a listing for a continuous period of at least twelve months as required under the regulations.  (*Id.* at 15.)

The ALJ continued to step four where he assessed what McCullough could do in the context of his impairments and concluded that McCullough retained the RFC to perform light work.  (*Id.* at 16.)  In making his RFC determination, the ALJ concluded that McCullough's testimony regarding his pain and restrictions, such as severe leg pain and his inability to perform household chores, was "not totally credible."  (*Id*. at 15.)  The ALJ also noted that while post-onset, McCullough worked part-time as a bagger at a Jewel Food Store and at UPS carrying and lifting up to 70 pounds.  (*Id.*)  Relying on McCullough's descriptions of his past jobs, as well as the vocational expert's testimony, the ALJ found that McCullough's prior work as a warehouse clerk, customer service representative, arbitration clerk, and assistant restaurant manager did not require him to perform activities that his RFC precluded.  (*Id.* at 16-17.)  The ALJ thus

concluded that McCullough was not disabled within the meaning of the Social Security Act. (*Id.* at 17.)

## **LEGAL STANDARDS**

### I.     **Standard of Review**

Because the Appeals Council denied McCullough's request for review, the Court reviews the ALJ's decision as the Commissioner's final decision. *See Fast v. Barnhart,* 397 F.3d 468, 470 (7th Cir. 2005). The Court reviews the ALJ's legal conclusions *de novo,* but deferentially reviews the ALJ's factual determinations and will affirm the ALJ's decision if it is supported by substantial evidence. *Haynes v. Barnhart,* ___ F.3d ___, 2005 WL 1743797, at *5 (7th Cir. July 26, 2005); *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). In other words, in reviewing the ALJ's decision, the Court does not reweigh the evidence, resolve conflicts in the evidence, make credibility determinations, or substitute its own judgment for that of the ALJ. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Instead, the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's factual findings. *See id*. at 368-69.

### II.    **Disability Standard**

A person is disabled for purposes of DIB if there is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Rice,* 384 F.3d at 365. In determining whether a claimant is disabled pursuant to Section 423(d)(1)(A), the Commissioner created a five-step, sequential analysis for evaluating claims.

*Rice,* 384 F.3d at 365 (citing 20 C.F.R. §§ 404.1520). Under this five-step analysis, a claimant

must show that: (1) he is not presently employed in a substantial gainful activity; (2) his

impairment is severe; and (3) his impairment meets or is equal to an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1. *Rice,* 384 F.3d at 365. If the impairment meets or equals

one of the listed impairments in step three, the claimant qualifies for benefits and the ALJ makes

no further inquiries. *Id.* If the claimant does not qualify for benefits under step three, the

analysis proceeds to step four, which requires an assessment of whether the claimant has

insufficient RFC to perform his past relevant work. *Id.* If the impairment precludes performance

of past work, under step five, the ALJ considers the claimant's age, education, past relevant

work experience, and RFC to determine if other work exists that would accommodate the

claimant. *Id.* The claimant bears the burden of proof through step four of this analysis. *See*

*Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004). At step five, the burden shifts to the

Commissioner to establish that the claimant can successfully perform a significant number of

jobs existing in the national economy. *Id.*

## ANALYSIS

McCullough claims that the ALJ did not have substantial evidence to support his decision

denying McCullough's disability benefits. Specifically, McCullough argues that the record does

not support the ALJ's decision that he failed to meet the 5.05C Listing for chronic liver disease

after January 2003. Further, McCullough contends that the ALJ and medical expert disregarded

medical evidence concerning his degenerative joint disease and pancreatitis.

### A.    Step Three Analysis

#### 1.    Chronic Liver Disease

McCullough's first argument is that the ALJ's decision that he did not meet the requirements for chronic liver disease under Listing 5.05C was not supported by substantial evidence in the record.  "Evidence is 'substantial' when it is sufficient for a reasonable person to accept as adequate to support a conclusion."  *Boiles,* 395 F.3d at 425 (citation and quotations omitted).

A claimant is eligible for DIB if he has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments in the Social Security regulations.  *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004); *see also Rice,* 384 F.3d at 365.  Listing 5.05C requires the following:

> Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease).  With:
> ...
>
>    C.    Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater
>    persisting on repeated examinations for at least 5 months ....

20 C.F.R. Part 404, Subpt. P, App. 1; *see also Henderson v. Apfel,* 179 F.3d 507, 513 (7th Cir. 1999) (Listing 5.05 includes chronic liver disease combined with serious complications).  To meet this listing, McCullough was required to show bilirubin levels exceeding 2.5 mg/dL for a five-month period and further that his impairment remained at this severity or was expected to remain at this severity for a twelve-month period.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Rice*, 384 F.3d at 365.

The medical evidence in the record reveals that McCullough had a bilirubin level exceeding 2.5 mg/dL from July 2002 until approximately mid-January 2003 –  well over five

months.  Although this satisfies Listing 5.05C's requirement of "at least five months,"
McCullough must further establish that his bilirubin level remained over 2.5mg/dL for a total of
twelve months or that his bilirubin level was expected to remain over 2.5mg/dL for a twelve-
month period.  The evidence in the record, however, reveals that McCullough's bilirubin levels
significantly improved once he quit drinking alcohol.  In fact, his bilirubin level in mid to late
January 2003 was 1.2mg/dL.  Accordingly, there was substantial evidence in the record to
support the ALJ's conclusion that McCullough did not meet the duration requirement of twelve
months.  *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509.

### 2.    Degenerative Joint Disease and Pancreatitis

Next, McCullough argues that the ALJ and medical expert, Dr. Ashuk Jilhewar,
disregarded medical evidence in the record concerning his degenerative joint disease ("DJD")
and pancreatitis.  As such, McCullough claims that the ALJ only relied on evidence that favored
his ultimate conclusion and did not articulate his analysis of the pertinent evidence.  *See Boiles,*
395 F.3d at 425.

Specifically, McCullough argues that Dr. Khan's outpatient notes of his examination on
January 6, 2003 state that McCullough had acute pancreatitis and DJD and that the medical
expert and ALJ disregarded these notes.  A closer review of Dr. Khan's notes, however, reveals
that Dr. Khan wrote that McCullough was at Provena Mercy Hospital in December 2002 with
cirrhosis, jaundice, acute pancreatitis, and DJD.  As such, these notations do not indicate that Dr.
Khan diagnosed McCullough with DJD and pancreatitis in January 2003, especially in light of
the fact that on the next page of his notes, Dr. Khan diagnosed McCullough with alcoholic liver
disease, jaundice, and alcoholic hepatitis.  Furthermore, the record contains no other reference to

a diagnosis of DJD.  Instead, the record contains evidence that McCullough had knee pain and knee arthritis, but that his knee x-ray was normal.  The ALJ considered this evidence and relied on the normal knee x-ray in making his determination.  *See Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997) (where conflicting evidence in record allows reasonable minds to differ, Commissioner has responsibility to resolve such conflicts).

As to his pancreatitis, McCullough again argues that the medical examiner and the ALJ disregarded Dr. Khan's diagnosis of acute pancreatitis.  As discussed above, Dr. Khan's January 2003 notation was not a diagnosis of pancreatitis.  In any event, at the administrative hearing, the medical expert testified that Dr. Khan's notes revealed that McCullough had a pancreatic history, but it was unclear from the medical record when McCullough had pancreatitis or how long he had it.  (Administrative Record at 192, 201-02.)  The medical expert also testified that acute pancreatitis may be resolved with abstinence, that is, not drinking alcohol.  (*Id.* at 201.)  The medical expert, however, also stated that if there was calcification in the pancreas, abstinence would not relieve the chronic pain.  (*Id.*)  Nonetheless, the medical expert testified that it was unclear if McCullough had pancreatitis in the first instance.  (*Id.* at 192-93, 201-02.)

Based on this evidence in the record, the medical expert did not disregard the evidence concerning pancreatitis, but instead testified that it was unclear whether McCullough had pancreatitis or if he did, how long McCullough had had pancreatitis.  Furthermore, the ALJ found the medical expert's testimony credible that McCullough did not have significant arthritis, hepatitis, or pancreatitis.  Although the ALJ's analysis may not be satisfactory to McCullough, in making a determination, an ALJ need not make a "complete written evaluation of every piece of testimony and evidence."  *Schmidt v. Barnhart,* 395 F.3d 737, 745 (7th Cir. 2005) (internal

citations omitted).  Thus, the Court concludes that the ALJ and the medical expert did not disregard evidence concerning McCullough's pancreatitis and that the ALJ sufficiently articulated his analysis of the evidence.  *See Boiles,* 395 F.3d at 425.

## B.    Step Four Analysis

Although McCullough does not cogently challenge the ALJ's step four determination, for the sake of completeness, the Court will examine the ALJ's decision that McCullough was able to perform a full range of light work and that he could perform his past relevant work.  Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

20 C.F.R. § 404.1567(b); *see also White v. Barnhart,* ___ F.3d ___, 2005 WL 1640118, at *4 (7th Cir. July 14, 2005).

At the administrative hearing, the medical expert reviewed the medical record and determined that Dr. Donnelly's RFC assessment was appropriate based on Dr. Karri's consultative examination.  Specifically, Dr. Donnelly concluded that McCullough was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently.  Also, Dr. Donnelly concluded that McCullough could stand/walk and sit about six hours in an eight-hour workday.

Furthermore, the vocational expert testified that the majority of McCullough's past relevant work involved light and unskilled jobs in conformance with the Dictionary of Occupational Titles ("DOT").  The ALJ's reliance on the vocational expert's testimony was proper, especially in light of her testimony as to the past relevant work conforming with the

DOT.  *See Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003).  Finally, the record reveals that

post-onset, McCullough lifted up to 70 pounds at his UPS job, which far exceeds the weight

requirements under 20 C.F.R. § 404.1567(b).  As such, substantial evidence supports the ALJ's

conclusion that McCullough could perform light work and his past relevant work.  *See Boiles,*

395 F.3d at 425 (evidence substantial if reasonable person would accept it as adequate to support

conclusion).

Nevertheless, McCullough contends that the ALJ's credibility determinations regarding

his inability to do chores or walk were in error.  *See Schmidt v. Barnhart,* 395 F.3d 737, 746-47

(7th Cir. 2005) (ALJ must articulate reason for discounting a claimant's testimony as being less

than credible).  The Court gives substantial deference to an ALJ's credibility determinations and

will not overturn such determinations unless they are patently wrong.  *See Rice,* 384 F.3d at 369;

*Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir. 2001).

Here, the ALJ made his credibility determinations based on substantial evidence in the

record, namely, that while post-onset, McCullough worked part-time as a bagger at a Jewel Food

Store and that he also worked at UPS carrying and lifting up to 70 pounds.  As such, the ALJ

reasoned that McCullough's claim that he could not walk or do chores was "not totally credible."

Based on this evidence, the ALJ's credibility determination was justified, and thus not patently

wrong.  *See Rice,* 384 F.3d at 371.[1]

### CONCLUSION

---

[1]  McCullough also takes umbrage with the ALJ's assessment of the vocational expert's
answer to the ALJ's hypothetical question.  Because the ALJ's hypothetical question included all
of the limitations supported by the medical evidence in the record, McCullough's argument is
without merit.  *See Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004).

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

Dated:   August 9, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**